**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1520

September Term, 2014

_____

HENRY IMMANUEL

v.

COMPTROLLER OF THE TREASURY

_____

Eyler, Deborah S.,
Woodward,
Berger,

JJ.

_____

Opinion by Woodward, J.

_____

Filed: November 25, 2015

On November 3, 2011, Henry Immanuel, appellant, sent a Maryland Public Information Act (MPIA) request to the Comptroller of the Treasury, appellee. Immanuel requested a list of the top 5,000 "unclaimed property accounts . . . that have been with your agency for 24 months or more . . . formatted from largest account values to smallest account values." The Comptroller denied Immanuel's MPIA request on the grounds that the information requested contained individual financial information, which is prohibited from disclosure under the MPIA. *See* Md. Code (2014), § 4-336(b) of the General Provisions Article ("GP").

On May 4, 2012, Immanuel filed a petition for judicial review of the Comptroller's denial in the Circuit Court for Wicomico County. By order dated July 13, 2012, the court directed the Comptroller to comply with Immanuel's MPIA request. Immanuel also filed a motion to seal the case record on the grounds that the record contained his trade secrets, which the court granted. The Comptroller filed an appeal to this Court, which reversed and remanded the case in a published opinion, *Comptroller of Treasury v. Immanuel*, 216 Md. App. 259 (2014) ("*Immanuel I*"). In *Immanuel I*, we concluded that "Immanuel should emerge on remand with a list of claims that tracks the Comptroller's disclosure obligations under the Abandoned Property Act." *Id.* at 275.

On remand, on July 21, 2014, the circuit court ordered Immanuel to submit a modified MPIA request, limited to accounts received by the Comptroller within 365 days with a value of $100 or greater, without any sorting by value or other financial information. In addition, the court vacated its order to seal.

On appeal, Immanuel presents two questions for our review, which we have slightly rephrased:

1. Did the circuit court err or abuse its discretion by not following this Court's mandate on remand?

2. Did the circuit court err by vacating its order to seal?

We answer both questions in the negative and, accordingly, affirm the judgment of the circuit court.

## BACKGROUND

The background for this case is set forth in *Immanuel I*:

> In his role as legal custodian of millions of dollars' worth of unclaimed property, the Comptroller enters and stores in a database information regarding the property he is holding and who might be entitled to claim it. As the Comptroller receives each piece of abandoned property, his staff logs data about the property, its value, and the likely owner into the Comptroller's database. The Comptroller is required by the Abandoned Property Act to publish annually, in local newspapers, the names and last known addresses of those individuals who appear to be the owners of property valued at $100 or more, although the published list does not disclose either the nature of unclaimed items of property or their value.
>
> [ ] Immanuel is a "tracer," someone who locates the owners of unclaimed property held by the Comptroller and, for a fee, assists those people in obtaining their property. On November 3, 2011, [ ] Immanuel sent a letter to the Comptroller requesting "a printout of all unclaimed property accounts" that had been unclaimed for two years or longer. In addition to requesting publicly available information—specifically, the names and last-known addresses of those entitled to the property—he asked the Comptroller to format the list "from largest account values to smallest account values" and to provide him "with the listing of the top 5,000 accounts after this formatting is done." In his request, [ ]

2

Immanuel acknowledged that the Public Information Act prohibited him from receiving "information concerning the specific value of each account or a description of the property," and he asked that, once the list was sorted, the specific values be removed. Although the Comptroller, with the help of his information technology ("IT") department, has the ability to perform [ ] Immanuel's request, the Comptroller denied it.

Since 1978, [ ] Immanuel has submitted requests asking for lists of names and addresses sorted by value. The Comptroller granted those requests until 1992. That year, however, the Attorney General issued an opinion stating that the Public Information Act prohibited the Comptroller from disclosing the monetary value of individual items of unclaimed property to members of the public. [ ] Immanuel, nonetheless, made five other requests in the years since, all five of which, including the one at issue, the Comptroller denied.

[On May 4, 2012,] Immanuel filed a petition seeking judicial review of the Comptroller's most recent denial in the Circuit Court for Wicomico County. The court held a hearing [on June 7, 2012,] and took testimony from [ ] Immanuel and Eric Eichler, the Assistant Manager of the Comptroller's Unclaimed Property Unit. According to [ ] Eichler, the Comptroller's IT staff logs information about each piece of unclaimed property into a database as the Comptroller receives it. From there, the IT staff can extract and sort data from the database, and does so for non-agency requesters with enough regularity that he maintains (and publishes on a "form letter") a schedule of fees. [ ] Eichler acknowledged that the Comptroller maintains "a list available for the public if they need to, but it's not sorted by dollar value." He also testified that the Comptroller extracts and produces lists from this database in batches of 10,000 records in the normal course, for which it charges $500, and that the Comptroller's fee schedule includes at least some forms of sorting. ("Q. But if my client were willing to pay for the [dollar-value] sort, doesn't this fee schedule cover that potential? A. Yes, depending on what the sort is, I assume.")

At the conclusion of the hearing, the circuit court declared that "[t]aking the additional step of formatting the list before redacting the financial information does nothing to reveal prohibited information." Then, observing that "disclosure of public records is favored" in Maryland, the court granted [ ] Immanuel the relief he sought and ordered the Comptroller to provide him with the information in the format he had requested.

*Id*. at 263-65 (footnotes omitted).

The circuit court issued an Opinion and Order on July 13, 2012, ordering the Comptroller to "comply with [Immanuel's MPIA] request and provide the unclaimed property records in the manner requested therein." On July 23, 2012, Immanuel filed a Motion to Seal or Otherwise Limit Inspection of a Case Record (Rule 16-1009(a)(1)(A)) ("Motion to Seal") on the grounds that the record contained his trade secrets. On August 9, 2012, the court granted Immanuel's motion to seal the case record ("order to seal"). Also on August 9, 2012, the Comptroller filed his notice of appeal of the court's July 13, 2012 Opinion and Order.

On April 18, 2013, Immanuel filed a Motion to Seal the Record with this Court. We granted Immanuel's Motion to Seal the Record on May 9, 2013.

On January 29, 2014, this Court decided *Immanuel I*. We stated therein:

[W]e hold that, in light of the Abandoned Property Act, the request seeks information that the Comptroller is required to disclose. That said, we also hold that a list sorted by dollar value would reveal additional individual financial information [that] Immanuel is not entitled to have, and we find that his request may be overbroad in one other way as well. So although [ ] Immanuel is entitled to the bulk of the information he has requested, **we reverse the judgment of**

4

**the circuit court and remand for further proceedings for the limited purpose of determining the precise scope and format of the list the Comptroller must produce**.

216 Md. App. at 262-63 (emphasis added).

On February 5, 2014, Immanuel filed a second MPIA request with the Comptroller, asking "that the top 100 accounts be made available to [him], include all data that is available to [him] that will not be considered private or confidential."

On February 5, 2014, Immanuel filed a Motion to Seal the Opinion with this Court, requesting that we change the designation of *Immanuel I* to unreported. Also, on February 20, 2014, Immanuel filed a Motion to Redact the Opinion with this Court, requesting that we redact the opinion of *Immanuel I* and change its designation to unreported. On February 28, 2014, the Comptroller filed with this Court a motion for partial reconsideration and opposition to Immanuel's motions to seal and redact the opinion. The Comptroller noted in its motion that Immanuel's February 5, 2014 MPIA request

> demonstrates [that] the Court's decision could be read to permit requesters to obtain comparative financial information about unclaimed property owners and to effectively allow these requesters to create their own ranking of claims by value—a type of information that this Court explicitly held was exempt from disclosure. The Comptroller therefore respectfully requests that the Court reconsider its decision and hold that [ ] Immanuel is not entitled to a list of any "top number" of claims.

On March 5, 2014, this Court denied Immanuel's motions to seal and redact *Immanuel I*. On March 27, 2014, we denied the Comptroller's motion for partial

reconsideration, because "[t]he issues raised by the Comptroller in the Motion for Partial Reconsideration must be considered, in the first instance, by the circuit court and upon an appropriate record."

On July 11, 2014, the Comptroller filed a Memorandum of Law on Remand with the circuit court. Immanuel filed his own memorandum on July 17, 2014. On July 21, 2014, the court held a hearing pursuant to our remand order. After the hearing and on the same day, the court issued an Order (1) directing Immanuel to submit a "modified" MPIA request, limited to accounts received by the Comptroller within 365 days with a value of $100 or greater, without any sorting by value or other financial information, and (2) ordering the Comptroller to comply with such request. In addition, the court denied Immanuel's oral request to continue to seal the case and vacated its earlier order to seal. On August 18, 2014, Immanuel filed a timely notice of appeal.

## STANDARD OF REVIEW

Maryland Rule 8-604(d)(1) provides that, "[u]pon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court." Rule 8-606(e) states that, upon receiving the appellate court's mandate, "the lower court shall proceed in accordance with its terms."

This Court has stated the following regarding a trial court's obligations following the issuance of an appellate opinion:

> While the Maryland cases and rules describe generally

6

the importance of the court's mandate and the procedures to be followed by the trial court—*i.e.*, "in accordance with the tenor and direction thereof"—they have not clearly described exactly what comprises the complete "order" or "judgment" of the court. As we construe these rules, and the cases discussing them, it is apparent that, in Maryland, the opinion, at the very least, may be an integral part of the appellate court's order or mandate when that order or mandate provides for a remand for proceedings consistent with the opinion. Moreover, when it is apparent from the opinion itself that a simplified "order" or mandate, *e.g.*, "Judgment Reversed," is ambiguous, then the opinion may be referred to and considered an integral part of that mandate. There may be, as we discuss *infra*, many types of unitary judgments or mandates, as opposed to multiple, severable parts of judgments, in which such a "Judgment Reversed" order or mandate would not be ambiguous and there would be no need to refer to the opinion. **Generally, however, any direction in an order or mandate that proceedings on remand are to be consistent with the opinion would necessarily require the opinion to be considered as an integral part of the judgment.** This position is consistent with the law of mandates as stated by most, but not all, of the few foreign jurisdictions that have squarely addressed the issue.

*Harrison v. Harrison*, 109 Md. App. 652, 665-66 (emphasis added), *cert. denied*,

343 Md. 564 (1996).

## DISCUSSION

In *Immanuel I*, we concluded our opinion by stating:

[W]e reverse the judgment below and remand for further proceedings for **the limited purpose of allowing the circuit court to determine the precise boundaries of the production the Comptroller must make to [ ] Immanuel. In practical terms, [ ] Immanuel should emerge on remand with a list of claims that tracks the Comptroller's disclosure obligations under the Abandoned Property Act, but that is not sorted by dollar value.**

216 Md. App. at 275 (emphasis added).

Our mandate then read:

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

*Id*.

Following a hearing, the circuit court issued the following order on July 21, 2014:

> **ORDERED,** that [Immanuel] submit a modified request for information to the [Comptroller] that is limited to information received by the [Comptroller] within 365 days prior to the date of this Order, said information to be limited to an alphabetical list of the names and last known addresses of individuals owning property with a value of one hundred dollars or more; said information shall not include a list of claims sorted in order of value or other financial information;
>
> It is further **ORDERED** that the [Comptroller] comply with any subsequent request for information made by [Immanuel] that is consistent with this Order, in the format requested by [Immanuel], subject to costs customarily charged by the [Comptroller]; and it is further
>
> **ORDERED** that [Immanuel's] request for attorney's fees is denied; [Immanuel's] oral request to seal this case is denied; and this court's earlier order to seal this case is vacated.

### I. Circuit Court's Order on Remand

Immanuel argues that the circuit court erred by not following this Court's mandate on remand. First, Immanuel contends that the court erred by ignoring "the instructions given to it by this Court and ordered [him] to submit a new

8

modified request for information and thereby start the entire [M]PIA request all over." Immanuel contends that *Immanuel I* did not alter the circuit court's original judgment ordering the Comptroller to comply with his MPIA request within thirty days, and that the court should have ordered the Comptroller to submit an alphabetized list of the top 5,000 claims, without any information regarding the monetary value of such claims, to Immanuel within thirty days. Next, Immanuel argues that the circuit court's order "went beyond the purpose of the remand" by requiring that his new request be limited to all accounts over $100 received by the Comptroller within 365 days prior to the date of the order, because (1) the circuit court "did not specifically order the Comptroller to provide the list of [the top] 5,000 accounts," and (2) the 365-day requirement "only applies to the Comptroller's publication of recently obtained abandoned property," and "ignores the legislative requirement that [Immanuel's] fee agreement would be unenforceable if 24 months (730 days) had not passed since the property was delivered to the Comptroller's Office."

The Comptroller responds that the circuit court complied with this Court's remand instructions by entering an order that tracked the requirements of the Abandoned Property Act. The Comptroller argues that the circuit court's decision to require Immanuel to submit a modified request was an appropriate exercise of the discretion accorded it by this Court to "determine the appropriate scope and mechanics of the Comptroller's production." *See Immanuel I*, 216 Md. App. at 263. According to the Comptroller, "this issue will soon become moot, as the

9

Comptroller will, in the near future, be producing to [ ] Immanuel the information described in the circuit court's order without waiting for [ ] Immanuel to submit a modified request."

Next, the Comptroller argues that Immanuel continues to seek a value-based list of claims to which he is not entitled, because the Abandoned Property Act only allows for disclosure of property valued at $100 or more, not "other value-based differential of claims." According to the Comptroller, "a list of the most valuable 5,000 claims necessarily provides additional individual financial information about the size of those 5,000 claims relative to" claims that would appear on the larger list of property valued at $100 or more. Furthermore, the Comptroller contends that,

> if [ ] Immanuel were to succeed in requesting a list of the 5,000 most valuable claims, it is unclear what would stop him from subsequently submitting iterative requests for the 4,900 most valuable claims, the 4,800 most valuable claims, and on down until he had a tiered list providing essentially the same information this Court has already said he is not entitled to receive about the relative value of claims.

According to the Comptroller, such contention is not "idle speculation," because Immanuel has already made a second MPIA request for a list of the top 100 claims.

As an initial matter, we agree with the Comptroller that Immanuel's claim of error relating to the trial court's order requiring a new MPIA request is moot, because the Comptroller agreed to disclose the information specified in the circuit court's order without a new MPIA request. At oral argument before this Court,

10

the Comptroller's counsel disclosed that, on the day before oral argument, he e-mailed to Immanuel's counsel a list of *all* claims of unclaimed property in its possession, with no restriction by time. This list contained approximately 900,000 claims.

As for Immanuel's contention that the circuit court's order went beyond the purpose of the remand, we hold that the circuit court did not err or abuse the discretion that we delegated to it. In *Immanuel I*, instead of specifying exactly which information Immanuel was entitled to receive from the Comptroller, we delegated this authority to the circuit court "to determine the precise boundaries of the production the Comptroller must make." 216 Md. App. at 275. Rather than stating that the Comptroller should disclose a list of the top 5,000 claims from the past twenty-four months or older, as Immanuel had requested, we stated that "Immanuel should emerge on remand with a list of claims *that tracks the Comptroller's disclosure obligations under the Abandoned Property Act.*" *Id.* (emphasis added).

The Abandoned Property Act requires the Comptroller to disclose (1) *all* claims valued at $100 or greater, *not* merely the top 5,000 claims; (2) limits the list of claims to those received within 365 days, *not* twenty-four months or more; and (3) requires the Comptroller to list such claims in alphabetical order of the owners' names, *without* disclosing any financial information. *See* Md. Code (2013), § 17-311 of the Commercial Law (III) Article ("CL"). Because the circuit court ordered the Comptroller to disclose to Immanuel

11

> information received by the [Comptroller] within 365 days prior to the date of this Order, said information to be limited to an alphabetical list of the names and last known addresses of individuals owning property with a value of one hundred dollars or more; said information shall not include a list of claims sorted in order of value or other financial information[,]

its order properly tracks the Comptroller's disclosure obligations under the Abandoned Property Act, and thus complies with our instructions to that court. *See Immanuel I*, 216 Md. App. at 275.

On remand, the circuit court received memoranda of law from both parties and held a hearing. The new information obtained by the court included Immanuel's new MPIA request to the Comptroller for the "top 100" most valuable claims. We agree with the Comptroller's contention that (1) not only does a list of the top 5,000 claims reveal additional individual financial information, namely that such 5,000 claims are more valuable than all other claims valued over $100 that the Comptroller is required to disclose; but (2) if we ordered the Comptroller to disclose the top 5,000 claims, Immanuel would be able to bypass our express prohibition against value-ranked claims by subsequent MPIA requests like the one that he has already submitted. *See Immanuel I*, 216 Md. App. at 274 (stating that a value-ordered list "discloses incremental financial information about the claim beyond the information the Abandoned Property Act requires the Comptroller to disclose"). Simply put, the *only* individual financial information that the Abandoned Property Act requires the Comptroller to disclose is that the public list

12

contains claims valued at over $100 and received within the last 365 days.[1] *See* CL § 17-311.

At oral argument before this Court, the Comptroller's counsel stated that, although the circuit court's order was proper because it tracked the Comptroller's disclosure obligations under the Abandoned Property Act, the Comptroller does not object to releasing a list of claims older than 365 days in response to an MPIA request. In fact, as stated above, the Comptroller released to Immanuel's counsel a list of every single claim valued at over $100 that it had on file, a total of over 900,000 claims. The Comptroller stated that it would not object to MPIA requests for claims limited by time (e.g., all claims received in within the last five years), but it would continue to object to MPIA requests for claims ranked or identified by value (e.g., the top 500 most valuable claims or all claims over one million dollars). We agree with the Comptroller that a list of any specific number of claims ranked or identified by value is barred from disclosure by the MPIA, as limited by the Abandoned Property Act, because releasing such information would

---

[1] Although Immanuel is correct that the Abandoned Property Act requires him to wait two years before assisting in the recovery of abandoned property, such requirement concerns Immanuel's own obligations under the Act, not the "Comptroller's disclosure obligations" under the Act. *See* Md. Code (2013), § 17-325 of the Commercial Law (III) Article ("All agreements to pay compensation to recover or assist in the recovery of property made within 24 months of the date the property is paid or delivered to the abandoned property office are unenforceable."); *see also Comptroller of Treasury v. Immanuel*, 216 Md. App. 259, 275 (2014) ("Immanuel should emerge on remand with a list of claims that tracks the Comptroller's disclosure obligations under the Abandoned Property Act.").

reveal the relative value of such claims in comparison with other claims in the Comptroller's possession, which would constitute disclosure of individual financial information. *See* GP § 4-336(b); CL § 17-311; *see also Immanuel I*, 216 Md. App. at 267-68. Nothing in our decision, however, precludes the Comptroller from releasing information on claims older than 365 days or within a specified time frame.

We note that, to the extent that our holding today revises or modifies our prior holding in *Immanuel I*, such modification is proper, because, in denying the Comptroller's motion for partial reconsideration of *Immanuel I*, we stated that the issues raised in the Comptroller's motion need to "be considered, in the first instance, by the circuit court and upon an appropriate record." In other words, we did not determine that the Comptroller's position in the motion was meritless; rather, we decided that the circuit court was the proper court to consider such position upon a more complete record. The circuit court did just that, and we agree with its decision.

## II. Circuit Court's Order to Unseal the Record

Immanuel argues that the circuit court erred by vacating its order to seal. Immanuel contends that, because the Comptroller never challenged the sealing of the court records in its original appeal, the order to seal is a final judgment. As a result, according to Immanuel, such order cannot be revised absent a finding of fraud, mistake, or irregularity, none of which was made by the court. In addition, Immanuel notes that he "was given no notice that the court might vacate its

14

previous order," especially considering that *Immanuel I* did not include the sealing of the record as one of the issues to be addressed on remand. Finally, Immanuel argues that, when this Court granted his Motion to Seal on May 9, 2013, the "sealing of the record of the case thereby became the law of the case," which was binding on the circuit court. According to Immanuel, this Court's decision to publish *Immanuel I* "did not render [his] right to keep his trade secrets private moot." We disagree and shall explain.

Both civil and criminal trials are presumptively open to the public, as the Court of Appeals has recognized "a common law right to inspect and copy judicial records and documents." *Balt. Sun Co. v. Mayor & City Council of Balt.*, 359 Md. 653, 661 (2000) (citations and internal quotation marks omitted). This common law rule means that court proceedings are presumed open unless a statute, rule, or appellate court decision provides otherwise. *Id*. at 662.

Maryland Rule 16-1009, Court Order Denying or Permitting Inspection of Case Record, provides:

> (a) **Motion.** (1) A party to an action in which a case record is filed, including a person who has been permitted to intervene as a party, and a person who is the subject of or is specifically identified in a case record may file a motion:
>
> > (A) to seal or otherwise limit inspection of a case record filed in that action that is not otherwise shielded from inspection under the Rules in this Chapter or Title 20; or
> >
> > (B) to permit inspection of a case record filed in that action that is not otherwise subject to

inspection under the Rules in this Chapter or Title 20.

(2) The motion shall be filed with the court in which the case record is filed and shall be served on:

>(A) all parties to the action in which the case record is filed; and

>(B) each identifiable person who is the subject of the case record.

***

(d) **Final Order.** (1) After an opportunity for a full adversary hearing, the court shall enter a final order:

>(A) precluding or limiting inspection of a case record that is not otherwise shielded from inspection under the Rules in this Chapter;

>(B) permitting inspection, under such conditions and limitations as the court finds necessary, of a case record that is not otherwise subject to inspection under the Rules in this Chapter; or

>(C) denying the motion.

(2) **A final order shall include findings regarding the interest sought to be protected by the order.**

(3) **A final order that precludes or limits inspection of a case record shall be as narrow as practicable in scope and duration to effectuate the interest sought to be protected by the order.**

(4) **In determining whether to permit or deny inspection, the court shall consider**:

>(A) **if the motion seeks to preclude or limit inspection of a case record that is otherwise subject to inspection under the Rules in this**

> **Chapter, whether a special and compelling reason exists to preclude or limit inspection of the particular case record**; and
>
> (B) if the motion seeks to permit inspection of a case record that is otherwise not subject to inspection under the Rules in this Chapter, whether a special and compelling reason exists to permit inspection.
>
> (C) if the motion seeks to permit inspection of a case record that has been previously sealed by court order under subsection (d)(1)(A) of this Rule and the movant was not a party to the case when the order was entered, whether the order satisfies the standards set forth in subsections (d)(2), (3), and (4)(A) of this Rule.
>
> (5) Unless the time is extended by the court on motion of a party and for good cause, the court shall enter a final order within 30 days after a hearing was held or waived.

(Emphasis added); *see State v. WBAL-TV*, 187 Md. App. 135, 156 ("Rules 16-1001, *et seq.*, clearly reflect the common law presumption of the openness of court records that, as a general rule, can only be overcome by a "special and compelling reason." (citations omitted)), *cert. denied*, 410 Md. 701 (2009); *see also Sumpter v. Sumpter*, 427 Md. 668, 682-83 (2012) (remanding the case because "[t]he limited record before [the Court] does not illuminate sufficiently the full contours of the Circuit Court policy or rule, its origin, the balancing of the interests sought to be protected by it against competing interests, whether less restrictive alternatives were considered and why they were rejected, and any special or compelling reasons to prohibit the parties' attorneys from receiving a copy of the custody investigation report").

In the case *sub judice*, Immanuel stated the following in his Motion to Seal, which used a court-issued, standard form:

> The information that should not be disclosed is (and you must be specific):
>
> All information concerning the formula and method of [Immanuel's] Public Information Request to the Unclaimed Property Unit of the Comptroller's Office.
>
> The reason(s) the information should not be disclosed is (and you must be specific):
>
> That it would be a disclosure of [Immanuel's] trade secret, as defined by CL § 11-1201(e).

The court order granting Immanuel's motion appeared on the same form as the motion, but did not contain (1) any findings regarding the interest sought to be protected from inspection, as required by Rule 16-1009(d)(2); (2) whether a special or compelling reason existed to justify the restricted access, as required by Rule 16-1009(d)(4)(A); or (3) whether any less restrictive alternatives existed to justify the restricted access, as required by Rule 16-1009(d)(3). *See Sumpter*, 427 Md. at 682-83. Thus it appears that the trial court issued its order to seal without making the necessary findings under Rule 16-1009. Moreover, Immanuel never produced *any* evidence of trade secrets.[2]

---

[2] Courts are mandated by statute to "preserve the secrecy of an alleged trade secret by reasonable means," such as by sealing a court record. Md. Code (1975, 2013 Repl. Vol.), § 11-1205 of the Commercial Law (II) Article. A trade secret is defined as

(continued . . .)

Assuming, *arguendo*, that the order to seal was proper under Rule 16-1009, appellant claims that the circuit court erred in vacating such order, because it was a final judgment. Under Rule 2-535, after thirty days after entry of a final judgment, a court may only "exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

We conclude that the order to seal was not a final judgment pursuant to Rule 2-535. *See Waterkeeper Alliance, Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 277 (2014) (noting that "Rule 2-535 is applicable only to final judgments"). The

_____

(continued . . .)

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 11-1201(e).

Immanuel referenced Section 11-1201(e) in his Motion to Seal; however, this provision, like Rule 16-1009, required Immanuel to prove that the information contained in the record constituted a trade secret, which he never did. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 662 & n.6 (4th Cir. 1993) (noting that Trandes Corporation "may very well possess unique information in its formulas and in the structure and organization of its programs, but it failed to prove that fact at trial").

19

Court of Appeals stated in *Waterkeeper Alliance* that "non-final orders are subject to revision . . . without regard to Rule 2-535." *Id*. (alteration in original) (citations and internal quotation marks omitted).

> An order will constitute a final judgment if the following conditions are satisfied: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy; (2) it must adjudicate or complete the adjudication of all claims against all parties; and (3) the clerk must make a proper record of it on the docket. In other words, for an order to qualify as a final judgment, it must adjudicate each and every claim and be reflected in a docket entry.

*Id.* at 278-79 (citations and internal quotation marks omitted).

In the case *sub judice*, the order to seal did not adjudicate or complete the adjudication of all claims against all parties, because it did not adjudicate Immanuel's MPIA claim—that claim was adjudicated by the court's July 13, 2012 Opinion and Order. As a result, the order to seal was not a final judgment, and thus was subject to revision by the circuit court without regard to Rule 2-535. *See Waterkeeper Alliance*, 439 Md. at 278-79.

Contrary to his contention, Immanuel was on notice that the circuit court would be reviewing its order to seal, because Immanuel himself brought up the order at the remand hearing. At the hearing, the following colloquy occurred:

| [IMMANUEL'S COUNSEL]: | And the last point I wanted to make was, originally when we were here two years ago I had requested that the records of this matter be sealed and this Court did grant |
|---|---|

| | |
|---|---|
| | that request based upon my client's trade secrets. |
| THE COURT: | Oh, really? Did I? I don't remember that. |
| [IMMANUEL'S COUNSEL]: | Although the Court of Special Appeals published it, I think, you know, reporters, other people would have less ability to understand the argument by reading a published opinion as opposed to, you know, actually we were looking at the members who were present in this courtroom. And we would still request that it continue to be sealed. |
| THE COURT: | I don't even remember doing that. |
| [IMMANUEL'S COUNSEL]: | And there was no opposition from the State when we requested that. |
| THE COURT: | **Well, I'm not sure**, is it a second really? I'm just curious. **I mean, your client is not the only person in the world who does this, apparently.** According to [the Comptroller's counsel]. |
| [IMMANUEL'S COUNSEL]: | The State has put my client—your business is called what . . . the Court of Special Appeals used . . . Tracers. The State of Maryland has put |

21

|  |  | tracers out of business in this state. And my client, there used to be a lot of competition for these accounts, and then when the Attorney General's office came up with their opinion, it basically put them out of business. |
|--|--|--|
| THE COURT: |  | Okay. **Well, I'm going to have to read the thing again**. . . . |

(Emphasis added).

The above colloquy makes clear not only that Immanuel raised the order to seal with the circuit court, but also that the court questioned the need for the sealing of the record. Thus the court signaled that there was a potential issue with continuing to seal the record in this case, and appellant had the opportunity to, and did, argue such issue.

Finally, the law of the case doctrine does not preclude the vacating of the order to seal. In *Kline v. Kline*, we explained such doctrine as follows:

> The law of the case doctrine provides that once a decision is established as the controlling legal rule of decision between the same parties in the same case it continues to be the law of the case. Specifically, a ruling by an appellate court upon a question becomes the law of the case and is binding on the courts and litigants in further proceedings in the same matter.

93 Md. App. 696, 700 (1992) (citation omitted). We disagree with Immanuel that this Court's May 9, 2013 order sealing the case in the previous appeal is the law of the case, because, after we issued that order, we not only published *Immanuel I*,

but also denied Immanuel's subsequent motions to seal and redact the published opinion. *See* 216 Md. App. at 259.

In sum, we hold that the trial court did not err or abuse its discretion in vacating its earlier order to seal, because (1) there is a presumption for open public records; (2) the order to seal did not contain the requisite findings under Rule 16-1009(d); (3) the order to seal was a non-final order subject to revision; (4) Immanuel was on notice that sealing the record may no longer be appropriate; and (5) this Court decided to publish *Immanuel I*.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**