*Henry Immanuel v. Comptroller of Maryland*, No. 87, Sept. Term, 2015, Opinion by Raker, J.

**MARYLAND PUBLIC INFORMATION ACT – RECORDS – FINANCIAL INFORMATION EXEMPTION** – Although the Maryland Public Information Act establishes a policy favoring disclosure of government documents, the exemption for individual financial information pursuant to Maryland Code (2014), § 4-336 of the General Provisions Article, prohibits the Comptroller of Maryland from disclosing incremental information about the value of abandoned property accounts by sorting a list of accounts by value in response to petitioner's Public Information Act request.

Circuit Court for Wicomico County
Case No. 22-C-12-000750
Argued: May 9, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 87

September Term, 2015

HENRY IMMANUEL

v.

COMPTROLLER OF MARYLAND

Barbera, C.J.,
Greene,
Adkins,
Watts,
Battaglia, Lynne A.
(Retired, Specially
        Assigned)
Raker, Irma S.
(Retired, Specially
        Assigned),
Wilner Alan M.
(Retired, Specially
        Assigned),

JJ.

Opinion by Raker, J.

Filed: July 12, 2016

We issued a writ of *certiorari* in this case to decide primarily whether the Maryland

Public Information Act and the Uniform Disposition of Abandoned Property Act require the

Comptroller of Maryland to withhold certain information about accounts held in the database

of abandoned property accounts.

The petition for *certiorari* presented the following questions:

> "1. Does the prohibition against providing financial information in response to Public Information Act requests prohibit disclosure of information concerning comparative values when interpreted in light of the legislative scheme and purpose of the Abandoned Property Act?
>
> 2. Was it proper for the Court of Special Appeals to affirm the modifications of Petitioner's Public Information Act request, as to number and age of accounts, and thus interfere with Petitioner's ability to profit from his work?
>
> 3. Was it proper for the Court of Special Appeals to affirm the Circuit Court's vacating its earlier sealing of the case to protect Petitioner's trade secret?"

We shall hold that the Maryland Public Information Act prohibits disclosure of

information that reveals the comparative value of abandoned property accounts, and shall

affirm.  Because we affirm, the issue of sealing the case is moot.

I.

This case has a long history in the courts and administrative agencies in Maryland.

The case centers around petitioner's November 3, 2011 written request for information under

the Maryland Public Information Act (hereinafter "MPIA"), Maryland Code (2014), § 4-101

*et seq.* of the General Provisions Article ("GP"),[1] related to the value of unclaimed property accounts in the custody of the Comptroller of Maryland. Petitioner requested a list of the names and addresses of individuals with the 5,000 largest accounts of unclaimed property, ordered from the largest value to the smallest. Based upon the Comptroller's interpretation of the statute that the requested information was prohibited under the MPIA, the Comptroller denied the request on the grounds that the records contained "information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness." GP § 4-336(b).

Petitioner filed a petition for judicial review in the Circuit Court for Wicomico County. He filed a motion to seal the case record on the grounds that the record contained his trade secret (his technique for soliciting the information in question in this case), which the Circuit Court granted. The Circuit Court ordered the Comptroller to disclose the requested records in value order as petitioner requested, and the Comptroller appealed to the Court of Special Appeals. The Court of Special Appeals affirmed in part, and reversed in part. *Comptroller of Treasury v. Immanuel*, 216 Md. App. 259, 85 A.3d 878 (2014) (*Immanuel I*). The Court of Special Appeals held that Mr. Immanuel was entitled to a list

---

[1]The Maryland Public Information Act currently appears as Title 4 to the General Provisions Article of the Maryland Code. Md. Code (2014), § 4-101 *et seq.* of the General Provisions Article. At the time petitioner made his request, the MPIA appeared in a different part of the Maryland Code. *See* Md. Code (1984, 2009 Repl. Vol.), § 10-604 *et seq.* of the State Government Article. The revisions reorganized substantially the MPIA, but did not change any of the relevant language.

of claims, but not sorted by value. *Id.* at 274, 85 A.3d at 887. The court remanded the case to the Circuit Court, "for the limited purpose of allowing the circuit court to determine the precise boundaries of the production the Comptroller must make to Mr. Immanuel," concluding that "Mr. Immanuel should emerge on remand with a list of claims that tracks the Comptroller's disclosure obligations under the Abandoned Property Act, but that is not sorted by dollar value." *Id.* at 275, 85 A.3d at 888.

On remand, the Circuit Court ordered petitioner to submit a modified MPIA request, limited to accounts received by the Comptroller within 365 days with a value of $100 or greater, without any sorting by value or other financial information. Upon the Comptroller's request, the Circuit Court vacated its order to seal the case. Mr. Immanuel appealed to the Court of Special Appeals, which affirmed the Circuit Court, holding that the Circuit Court did not err or abuse the discretion delegated to it, as "its order properly tracks the Comptroller's disclosure obligations under the Abandoned Property Act, and thus complies with our instructions to that court." *Immanuel v. Comptroller of Treasury*, 225 Md. App. 581, 594, 126 A.3d 196, 203 (2015) (*Immanuel II*). The court agreed with the Circuit Court that extracting "a list of any specific number of claims [*i.e.* extracting the most valuable 5,000 accounts] ranked or identified by value is barred from disclosure by the MPIA, as limited by the Abandoned Property Act, because releasing such information would reveal the relative value of such claims in comparison with other claims in the Comptroller's possession, which would constitute disclosure of individual financial information." *Id.* at

595, 126 A.3d at 204.

We granted a writ of *certiorari* to consider the issues presented. *Immanuel v. Comptroller of Maryland*, 446 Md. 218, 130 A.3d 507 (2016).

## II.

The MPIA gives the public the right to broad disclosure of government or public documents with exemptions for specific kinds of information. GP § 4-101, *et seq.* The Act describes the general right to information as follows:

> "(a) All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees.
>
> (b) To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this title shall be construed in favor of allowing inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection."

GP § 4-103. We construe the MPIA liberally to effectuate the Act's broad remedial purpose. *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). The MPIA defines "public record" as "the original or any copy of any documentary material that: (I) is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business . . . ." GP § 4-101(j)(1).

The State must disclose certain records unless the requested records are within the

scope of a statutory exemption. *Faulk v. State's Att'y for Harford Cty.*, 299 Md. 493, 506-07, 474 A.2d 880, 887 (1984). Section 4-103(b) of the MPIA provides that records should be withheld if "an unwarranted invasion of the privacy of a person in interest would result . . . ." The MPIA is clear that "[u]nless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this part." GP § 4-304. Sections 4-328-342 of the MPIA sets out required denials for specific information—exemptions to the general policy of disclosure of public records. The exemptions are categories of documents and information "that the statute mandatorily instructs a custodian to deny, or permit, inspection." *Univ. Sys. of Maryland v. Baltimore Sun Co.*, 381 Md. 79, 88, 847 A.2d 427, 432 (2004). Importantly, the express exemptions set out in the statute, "are intended to address the reasonable expectation of privacy that a person in interest has in certain types of records identified by the Legislature." *Id.* at 99-100, 847 A.2d at 439. The prohibition against disclosing financial information is codified in GP § 4-336, which reads as follows:

> "(a) This section does not apply to the salary of a public employee.
>
> (b) Subject to subsection (c) of this section, a custodian shall deny inspection of the part of a public record that contains information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness.
>
> (c) A custodian shall allow inspection by the person in interest."

The Uniform Disposition of Abandoned Property Act (hereinafter "Abandoned Property Act"), Maryland Code (1990), § 17-301, *et. seq.* of the Commercial Law Article

("CL"), provides that "[e]very person holding funds or other tangible or intangible property presumed abandoned under this subtitle shall report to the Administrator with respect to the property as provided in this section."  CL § 17-310.  In Maryland, "abandoned property" is defined as tangible and intangible personal property considered abandoned under the title.  CL § 17-101(b)(1).  The Comptroller is the Administrator under the Abandoned Property Act.  CL § 17-101(c).  After reporting the property to the Comptroller, the property holder must then deliver the abandoned property to the Comptroller, CL § 17-312, who acts as custodian for the owner.  CL § 17-313.  The Abandoned Property Unit of the Comptroller's Office maintains a database of information regarding the property held and the persons entitled to claim it.  Information in the Abandoned Property Unit database can be extracted and sorted.

The Abandoned Property Act requires that the Comptroller notify the public of those accounts held, providing as follows:

> "Within 365 days from the filing of the report required by § 17-310 of this subtitle, the Administrator shall cause notice to be published in a newspaper of general circulation in the county in the State within which is located the last known address of any person to be named in the notice."

CL § 17-311(a)(1).[2]  The notice shall contain "[t]he names in alphabetical order and last

---

[2]The Comptroller must also, within 120 days from the receipt of the report of abandoned property under CL § 17-310, mail a notice to each person who has an address listed in the report who appears entitled to property valued at $100 or more.  CL § 17-311.  This provision is not relevant to the issue we consider herein.

known addresses, if any, of persons listed in the report . . . ." CL § 17-311(b)(1). The Comptroller is not required to publish in the notice any item valued at less than $100 unless the Comptroller considers the publication to be in the public interest. CL § 17-311(c). Further information about an account, including the amount or description of the property, is reserved for "any person who possesses an interest in the property," and such information may be obtained by addressing inquiry to the Comptroller. CL § 17-311(b)(2).

III.

Before this Court, petitioner argues that the plain language of the MPIA and the Abandoned Property Act require disclosure of the information he requested, and that the purpose of those statutes is served by disclosure. He argues that the Court of Special Appeals erred in adding language to the MPIA prohibiting disclosure of incremental financial information based on comparative value. Petitioner argues that the purposes of the two statutes are disclosure of public information favored over non-disclosure, and return of property to true owners favored over unjust enrichment by holders of abandoned property. Also, petitioner argues that the purpose of the disclosure requirement of the Abandoned Property Act is meant to halt the unjust enrichment of the State's general fund.

Petitioner argues that the lower courts improperly required him to modify his MPIA request, as it is not within the purview of the courts to act beyond the remedies prescribed

in GP § 4-362(c)(3).[3] He argues that because the Legislature has contemplated and regulated his profession, the Legislature intended for his profession to be profitable. Petitioner asserts that the request as ordered by the Circuit Court—for the names and last known addresses for all account holders with accounts valued over $100 reported within 365 days, not in any value order—would prevent him from making any profit. Petitioner cannot enforce contracts with account holders unless the account has been with the Comptroller over 24 months. CL §17-325. Further, he cannot run his business efficiently by seeking the holders of the most valuable accounts without a value-ordered list.

Petitioner argues that it was improper for the Circuit Court and the Court of Special Appeals to rescind their initial orders sealing the cases that have resulted in this appeal, as a description of his technique for soliciting the information at issue in this case is a trade secret under CL § 11-1201(e).[4] Petitioner argues that although his technique was made

_____

[3]General Provisions Article § 4-362(c)(3) provides as follows:
> "(3) The court may:
>> (I) enjoin the State, a political subdivision, or a unit, an official, or an employee of the State or of a political subdivision from:
>>> 1. withholding the public record; or
>>> 2. withholding a copy, printout, or photograph of the public record;
>> (ii) issue an order for the production of the public record or a copy, printout, or photograph of the public record that was withheld from the complainant; and
>> (iii) for noncompliance with the order, punish the responsible employee for contempt."

[4]The relevant sub-paragraph of the Commercial Law Article § 11-1201 reads as
(continued...)

public in two published opinions of the Court of Special Appeals, this action does not leave him without the remedy of now sealing the cases from further publication.

The Comptroller argues that the information petitioner seeks goes beyond the information he is required to disclose under the Abandoned Property Act, and that the additional information at issue is information about the finances of individuals, including assets, bank balances and financial activities. The Comptroller argues that he is required under the Abandoned Property Act to reveal publicly a particular subset of the information he holds about abandoned property accounts. That information includes the names and last known addresses of individual account holders in alphabetical order, but that excludes the value of the property. The Comptroller maintains that the General Assembly could have required the Comptroller to make publicly available the information in his possession about asset value, but it declined to do so. The Comptroller further argues that the Circuit Court did not err in modifying petitioner's MPIA request, and that the Circuit Court faithfully

_____

(...continued)
follows:

> "(e) 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

executed the mandate of the Court of Special Appeals in *Immanuel I*, as the intermediate appellate court held in *Immanuel II*.

The Comptroller argues that the lower courts were correct to rescind previous orders sealing this case or refusing to seal the case, contending that unless petitioner is actually entitled to the information he seeks, his method of requesting it cannot possibly constitute a trade secret. Further, the Comptroller argues that the technique petitioner seeks to protect has been published in two opinions of the Court of Special Appeals and is described almost exactly in the 1992 Attorney General's Opinion on this subject. *See* 77 Md. Op. Att'y Gen. 188 (1992).

IV.

We shall first address petitioner's arguments that the plain language of the MPIA and the Abandoned Property Act require the Comptroller to disclose the information petitioner requested in the format in which he requested it, and that disclosure supports the legislative purposes and history of the MPIA and the Abandoned Property Act.

The question of whether the Comptroller must disclose the records as petitioner requested depends upon the Legislature's intent in enacting the MPIA—does the intent of the Legislature to exempt certain records from disclosure under the MPIA include the information petitioner seeks in the ordered format in which he requested it, even in light of the disclosure requirements of the Abandoned Property Act? This is a matter of statutory

interpretation, the principles of which are well settled.

We seek to "discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Prop. & Cas. Ins. Guar. Corp. v. Yanni*, 397 Md. 474, 481, 919 A.2d 1, 5 (2007) (quoting *In re Kaela C.*, 394 Md. 432, 468, 906 A.2d 915, 936 (2006)). We consider first the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that "no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* (quoting *In re Kaela C.*, 394 Md. at 468, 906 A.2d at 936). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *City of Frederick v. Pickett*, 392 Md. 411, 427, 897 A.2d 228, 237 (2006). If the statutory language is subject to more than one interpretation or is ambiguous, we resolve the ambiguity by considering the statute's legislative history, our case law, and the overall purpose of the statute. *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006).

The interaction between the MPIA and the Abandoned Property Act is not plainly set out in the statutory language. Reading together the MPIA exemption for personal financial information and the Abandoned Property Act notice publication requirements leaves room for contradictory interpretations as applied to the facts of this case. Reading the plain language of the MPIA general right to information in GP § 4-103 along with the exemption for financial information in GP § 4-336, in conjunction with the publication requirements of

CL § 17-311, is not sufficient to discern whether the Legislature intended for the Comptroller to disclose the requested information to petitioner in the format he requests.

In cases where two statutes apply to the same situation, we attempt first to reconcile them. *Suter v. Stuckey*, 402 Md. 211, 231, 935 A.2d 731, 743 (2007). For one statute to alter or limit another, the Legislature must have clearly intended to do so. *See Drew v. First Guar. Mortg. Corp.*, 379 Md. 318, 330, 842 A.2d 1, 8 (2003). The Legislature did not manifest such an intent in these statutes. Neither of the acts refers directly to the other. Thus, if two acts can reasonably be construed together, so as to give effect to both, such a construction is preferred, and the two should be construed together to be interpreted consistently with their general objectives and scope. *Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462, 869 A.2d 822, 834 (2005); *Harvey v. Marshall*, 389 Md. 243, 289-90, 884 A.2d 1171, 1199 (2005).

We seek to make such a harmonious construction that is consistent with the clear and unambiguous meaning of the language found in each statute. Because the plain language of the two statutes does not offer an unambiguous answer as to whether the Comptroller should disclose the information petitioner seeks, we consider the legislative purpose of the statutes. Petitioner suggests that the legislative purpose supports his request for information as the MPIA favors disclosure. We, instead, see a dual legislative purpose of the MPIA—disclosing information about the functioning of the State government while protecting the personal individual information that the State retains, the kinds contemplated in the statutory exemptions.

This Court has recognized that the MPIA establishes a public policy and a general presumption in favor of disclosure of government or public documents. *Kirwan v. The Diamondback*, 352 Md. 74, 80, 721 A.2d 196, 199 (1998). The MPIA is clear that its provisions "shall be construed in favor of allowing inspection of a public record." GP § 4-103. We construe the MPIA liberally "in order to effectuate the [Act's] broad remedial purpose." *A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). In a doubtful case, the party requesting information under the Act is favored. *Kirwan*, 352 Md. at 84, 721 A.2d at 200. Significantly, however, the State's duty to disclose certain records is limited by the scope of the statutory exemptions. *Faulk v. State's Att'y for Harford Cty.*, 299 Md. 493, 506-07, 474 A.2d 880, 887 (1984). The MPIA is clear that "[u]nless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this part." GP § 4-304.

While the public policy of the MPIA favors disclosure, the purpose of the Act reveals a legislative goal other than complete *carte blanche*, unrestricted disclosure of all public records. *Univ. Sys. of Maryland v. Baltimore Sun Co.*, 381 Md. 79, 94, 847 A.2d 427, 436 (2004). The legislative purpose underpinning the MPIA is that "citizens of the State of Maryland be accorded wide-ranging access to public information *concerning the operation of their government*." *Fioretti v. Maryland State Bd. of Dental Exam'ns*, 351 Md. 66, 73, 716 A.2d 258, 262 (1998) (emphasis added) (quoting *A.S. Abell Pub. Co.*, 297 Md. at 32, 464 A.2d at 1071); *see also Hammen v. Baltimore Cty. Police Dep't*, 373 Md. 440, 454-56, 818

A.2d 1125, 1134-36 (2003); *Kirwan*, 352 Md. at 81, 721 A.2d at 199. This purpose is

expressed clearly in the MPIA, GP § 4-103, the General Right to Information:

> "(a) All persons are entitled to have access to information about
> the *affairs of government and the official acts of public officials
> and employees*." (Emphasis added).

This legislative purpose—to inform citizens about the workings of their

government—is reflected in jurisprudence interpreting the federal Freedom of Information

Act (FOIA), 5 U.S.C. § 552. Where the purpose and language of a federal statute are

substantially the same as that of a later state statute, ordinarily interpretations of the federal

statute are persuasive. *Faulk*, 299 Md. at 506, 474 A.2d at 887; *see also Montgomery Cty.

Bd. of Educ. v. Glassman Constr. Co.*, 245 Md. 192, 202-04, 225 A.2d 448, 454-55 (1967).

Although the text and history of the MPIA differ from the FOIA, the Maryland Act was "to

some extent modeled after the Federal Freedom of Information Act," *Office of Governor v.

Washington Post Co.*, 360 Md. 520, 533, 759 A.2d 249, 256 (2000), and the purpose of the

MPIA is "virtually identical to that of the FOIA." *Faulk*, 299 Md. at 506, 474 A.2d at 887.

We have recognized the utility of looking to FOIA jurisprudence in interpreting the

exemptions under the MPIA. *See Fioretti*, 351 Md. at 75-76, 716 A.2d at 263

(interpretations and reasoning of the federal courts addressing the "investigatory files"

exemption provided in section 552(b) of the FOIA, the so-called "Exemption 7," are

persuasive in interpreting similar provision in MPIA).

Particularly illuminating for the case *sub judice* is how the Supreme Court has crafted

-14-

law relating to the exemptions in 5 U.S.C. § 552(b). In *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989), the Supreme Court addressed the issue of whether disclosing the contents of federal rap sheets, compilations of criminal arrests, charges and convictions, to a third party "could reasonably be expected to constitute an unwarranted invasion of personal privacy" within the meaning of exemption in 5 U.S.C. § 552(b)(7)(C). *Reporters Comm.*, 489 U.S. at 751. The Supreme Court reasoned that "the basic purpose of the Freedom of Information Act [is] 'to open agency action to the light of public scrutiny,'" *id.* at 772 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)), recognizing "the core purpose of the FOIA as 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" *Id.* at 775. The Court made the important distinction between revealing compiled information that is in the Government's control and records of "what the Government is up to," *id.* at 780, in reasoning as follows:

> "[T]he FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed. Thus, it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen."

*Id.* at 774-75. Disclosure under the FOIA is not an end for its own sake, but instead must be for the purpose of helping citizens understand and oversee the workings of government.

A FOIA case heard by the United State Court of Appeals for the District of Columbia,

*Lepelletier v. F.D.I.C.*, 164 F.3d 37 (D.C. Cir. 1999), bears close resemblance to the case *sub judice*, and demonstrates how the federal courts balance the FOIA interests in a matter where individuals may gain a benefit from the government disclosing individual private information, but where protecting private information was still upheld. Lepelletier was an independent money finder, essentially the same profession as petitioner, who sought release of the names of depositors with unclaimed funds at three banks for which the Federal Deposit Insurance Corporation ("FDIC") was the receiver after the FDIC released a list of the amounts of all unclaimed deposits. The FDIC refused to release the names of corresponding living people and corporations under exemption 6 of FOIA. The United States Court of Appeals for the District of Columbia Circuit balanced the public interest—which the Court regarded as "no clearly discernible public interest . . . because such a release would not inform the public of what the FDIC is 'up to,'" *id.* at 47—with the conflicting interests of the individual in their privacy and alternatively in being reunited with their funds. The Court resolved this conflict as follows:

> "In this case, a number of the depositors have a significant pecuniary interest at stake, and disclosure of their names will greatly increase the probability that they (or their heirs) will be reunited with their funds. Thus, it is overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the money than have neither. Accordingly, the list-of-names information sought by Lepelletier may be released under FOIA. However, because we remain particularly concerned with the possibility of invading the privacy of the depositors, and because there is no discernible public interest in disclosure, *we believe any release of the depositors' names must*

-16-

*be limited in two significant ways.*

*First, any release of names associated with the unclaimed deposits should not be matched with the amount owed to that individual. We believe that this 'unmatched' list constitutes a lesser privacy invasion than a matched one.* Therefore, any list that is released under FOIA may only contain the names of those with unclaimed deposits, and may not provide the corresponding unclaimed amount. (The FDIC has already released a list containing the amounts of each deposit; thus, in the end, it is possible that there will be two separate lists: one of names, and one of amounts.)."

*Id.* at 48 (emphasis added). This resolution preserved privacy of a specific kind—the value of an asset or account held by an identified individual.

Our cases interpreting the MPIA establish a similar balance between disclosure and maintaining privacy of individual information. In *Office of Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000), we held that the General Assembly, in defining "public record," did not intend to include the home telephone records of the Governor of the State of Maryland and his family. *Id.* at 538, 759 A.2d at 259. The MPIA request sought disclosure of the Governor's scheduling and appointment records and records of "[a]ll phones in the Governor's Mansion [Government House]; his State House offices; all phones in Shaw House (an annex office in Annapolis); all phones in the Washington and Baltimore offices; all car phones and cellular phones used by the Governor and anyone on his staff," for a two-year period. *Id.* at 526, 759 A.2d at 252-53. We reasoned that while the Governor and his family might not retain identical expectations of privacy while living in Government House as one has in his or her privately owned home, the Governor and his family need not

-17-

relinquish all normal expectations of privacy in their home simply because, in accordance with constitutional and statutory provisions, their home and furnishings, including telephone service, are supplied by the State. *Id.* at 537-38, 759 A.2d at 258-59. In the matter of the phone records for Government House, we held that the records were not public records, thus not susceptible to production under the MPIA, maintaining the purpose of the MPIA in preserving the privacy of personal individual records, even when held by the State. *Id.*

In *Univ. Sys. of Maryland v. Baltimore Sun Co.*, 381 Md. 79, 847 A.2d 427 (2004), we confronted some of the limits of the exemption for personal financial information in GP § 4-336 (then State Government Article § 10-617(f)(2)). The Baltimore Sun and one of its sports reporters requested from the University of Maryland, College Park, under the MPIA, compensation information for football head coach Ralph Friedgen (and later in a separate request we also considered the same information for basketball head coach Gary Williams). The request sought "copies of the original and revised employment contracts . . . [and] any separate letters of understanding, side letters or similar documents specifying incentives, bonuses, broadcast agreements, athletic footwear contracts, and other matters concerning the terms and conditions of [Coach Friedgen's] employment and compensation." *Univ. Sys. of Maryland*, 381 Md. at 81, 847 A.2d at 428. In accordance with National Collegiate Athletic Association (NCAA) rules, the University of Maryland was required to collect from coaches information about their sources of athletics-related income from third parties. *Id.* at 90, 847 A.2d at 433-34. We considered whether the third party contracts were subject to the

exemption from disclosure in GP § 4-336 for "information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness." We held that records of financial arrangements between the coaches and third parties were not subject to disclosure unless the contract with the third party was so connected with the coach's public employment that it was, in effect, a part of the University contract. *Univ. Sys. of Maryland*, 381 Md. at 104, 847 A.2d at 442. We reasoned as follows:

> "Nonetheless, balancing the public's right of access to the affairs of government and the caution against unwarranted invasions of privacy, articulated in [SG] § 10-612, as manifested in the Legislature's exemption of certain financial information from disclosure pursuant to [SG] § 10-617(f) [now GP § 4-336], we do not believe the records of the private business affairs of Coaches Friedgen and Coach Williams, including contracts with third parties, unrelated to their public employment, are required to be disclosed."

*Id.* at 104, 847 A.2d at 442. Although the proximity and relationship between the compensation from the University and the third party contracts required further factual determinations on remand, our emphasis on maintaining the barrier between disclosure of public activity and exempting private information is clear. The MPIA is a statutory mechanism for revealing matters of governance, in this case salary payments to a State employee, but it should not reveal information from beyond where State activity ends and private activity begins, even if the government has acquired records on those private individual matters.

-19-

The Comptroller adopted his non-disclosure policy based on an opinion from the Maryland Attorney General. Although not binding on this Court, we consider the Attorney General's opinions for their persuasive value, if any. *Port v. Cowan*, 426 Md. 435, 447 n.14, 44 A.3d 970, 977 (2012). The Comptroller asked the following of the Attorney General:

> "[W]hether a part of a public record that discloses the monetary value or description of property reported to the Unclaimed Property Section as abandoned property must be withheld from public disclosure."

77 Md. Op. Att'y Gen. 188 (1992). In response to the inquiry, the Attorney General opined that "a list showing how much money or what type of property people have left unclaimed reveals information about the 'assets' of those people." *Id.* The Attorney General noted that he had concluded previously that "the bare fact of ownership of an asset is ordinarily nondisclosable under SG § 10–617(f)(2) [now GP § 4-336]." *Id.* (citing Md. Op. Att'y Gen. 85–011 (April 15, 1985) (unpublished)). The Attorney General concluded that the Comptroller did not have discretion—that he must withhold the information as disclosure would violate the MPIA exemption in State Government Article, § 10-617(f)(2) (now GP § 4-336). 77 Md. Op. Att'y Gen. 188. The Attorney General took into account the public disclosure requirement in the Abandoned Property Act, concluding that because CL § 17-311 requires the Comptroller to publish the names and last known addresses of abandoned property account holders, that information is not confidential under State Government Article § 10-617(a) (now GP § 4-328). We find this opinion to be persuasive.

In the case *sub judice*, we agree with the Attorney General and the Court of Special

Appeals that GP § 4-336, *in a vacuum*, would prohibit the Comptroller from disclosing any information about individual accounts that are in his guardianship.[5] *Immanuel I*, 216 Md. App. at 273, 85 A.3d at 887. The data in the Comptroller's database is the kind of information that GP § 4-336 protects from inspection—individual information about assets, net worth, bank balances, and financial history. *See id.* The legislative intent in enacting the MPIA is to allow Marylanders to learn about what their government is doing, not to permit unfettered access to information that the State holds about individual citizens. This intent is discernable from the language of the statute, which includes the specified exemptions, including GP § 4-336, and from how we have interpreted those varied protections. In this way, the MPIA tracks its federal counterpart, FOIA; it is a powerful tool for understanding the activities and actions of the State government, but it should not be a means of invading the privacy of individuals merely because the State has collected information about those people or their property. The MPIA is constructed to protect this boundary. Information about the value of individual accounts, even incremental information deduced from an ordered list, does not offer the citizen a better understanding of how the government of the State of Maryland is functioning or what it is up to. Such information offers no discernable

[5]We agree with the Court of Special Appeals that the issue of whether the trial court erred in ordering petitioner to file a new MPIA request is moot so long as the Comptroller fulfills his agreement to disclose the information specified in the Circuit Court's order—all claims of unclaimed property in the Comptroller's possession, with no restriction by time—without requiring petitioner to file a new MPIA request. *See Immanuel v. Comptroller of Treasury*, 225 Md. App. 581, 593, 126 A.3d 196, 203 (2015).

insight into governance that would warrant overcoming the individual privacy interest in personal financial information codified in GP § 4-336.

Were it not for the publication requirement in the Abandoned Property Act, CL § 17-311, conceivably, the information the Comptroller holds about the individual abandoned property accounts might be exempted entirely from disclosure under the MPIA. General Provisions § 4-304 requires that "[u]nless otherwise provided by law, a custodian shall deny inspection of a public record" of the kinds described in the exemptions. The publication requirement in the Abandoned Property Act, however, is just such an exception. The Comptroller must publish certain limited information about the abandoned property accounts.

The Legislature enumerated specifically the information about the accounts that the Comptroller shall publish. The Comptroller is required to publish the names in alphabetical order and last known addresses, if any, of persons entitled to notice. CL § 17-311(b)(1). The Legislature could have required that the Comptroller publish further information, but it did not. By stating that the Comptroller's notice "shall contain" the particular kinds of information listed, we consider that the specific kinds of information detailed in the statute are enumerated to the exclusion of other information.[6] *See Immanuel II*, 225 Md. App. at 594, 126 A.3d at 204 ("Simply put, the only individual financial information that the

---

[6]Maryland has long accepted the doctrine of *expressio* (or *inclusio*) *unius est exclusio alterius*, or the expression of one thing is the exclusion of another. *Comptroller of Treasury v. Blanton*, 390 Md. 528, 537, 890 A.2d 279, 285 (2006) (citing Black's Law Dictionary 1717 (8th ed. 2004)); *see also Baltimore Harbor v. Ayd*, 365 Md. 366, 385, 780 A.2d 303, 314 (2001) (holding that "[w]e have long applied the principal of statutory construction, '*expressio unius est exclusio alterius*.'").

Abandoned Property Act requires the Comptroller to disclose is that the public list contains claims valued at over $100 and received within the last 365 days.").[7] The statute further states that such further information "may be obtained by any person who possesses an interest in the property, by addressing an inquiry to the [Comptroller]," CL § 17-311(b)(2), reserving the information for those persons and restricting others from obtaining it. The property owner is entitled to further information but petitioner is not.

In order to harmonize the two statutes, we give value to the choice that the Legislature made in selecting for publication just the included information about each account, and the specificity with which it described the information. Importantly, the statute specifically calls for the Comptroller to publish "the names in alphabetical order." CL § 17-311(b)(1). This is significant in that the statute does not leave the ordering of the publication subject to the Comptroller's discretion.

Petitioner argues that the Court of Special Appeals added language to the MPIA in prohibiting disclosing the comparative value of accounts in the Comptroller's custody. We agree with the Court of Special Appeals that ordering the accounts based on value, even with the actual value removed, adds information about the relative value of each individual account. *See Immanuel I*, 216 Md. App. at 274, 85 A.3d at 887. That is why petitioner seeks to have the list ordered according to value—because the additional information afforded by

---

[7]We agree with the Court of Special Appeals that while the Uniform Disposition of Abandoned Property Act allows enforcement of contracts for a finder's fee only if an account has been in the custody of the Comptroller for two years, such requirement does not alter the Comptroller's disclosure obligations under the Abandoned Property Act.

the ordering would be useful and valuable to him. The purpose of listing the names in alphabetical order, rather than in another order, is to only offer that limited information about the accounts, the names themselves paired with an address. To permit the Comptroller to disclose such additional information about the accounts would not only be contrary to the exemption in the MPIA, but it would contravene the plain language of the Abandoned Property Act by disclosing information beyond that which the Act specifies.

Petitioner is not entitled to information from the Comptroller's database beyond that which the Comptroller must publish per CL § 17-311. We agree with the Court of Special Appeals that this precludes disclosure of the incremental information afforded by ordering the list of accounts based on the values, as a value-ordered list "discloses incremental financial information about the claim beyond the information the Abandoned Property Act requires the Comptroller to disclose." *Immanuel I*, 216 Md. App. at 274, 85 A.3d at 887. We further agree with the Court of Special Appeals that a list of the top 5,000 claims "reveal[s] additional individual financial information, namely that such 5,000 claims are more valuable than all other claims valued over $100 that the Comptroller is required to disclose." *Immanuel II*, 225 Md. App. at 594, 126 A.3d at 203-04. We hold that the Circuit Court did not err in ordering that the Comptroller disclose to petitioner only the information he is required to publish under the Abandoned Property Act, nor did it err in ordering petitioner to conform his request to those criteria.[8]

---

[8]In light of our holding, petitioner's attempt to protect his method is moot.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**