In the Matter of the Petition of the Mayor and City Council of Baltimore City, Nos. 340, 371, September Term, 2024. Opinion Graeff, J.

**MARYLAND PUBLIC INFORMATION ACT—MANDATORY EXEMPTION—FINANCIAL INFORMATION—DISCLOSURE OF DONOR IDENTITIES**

Md. Code Ann., Gen. Prov. ("GP") § 4-336 provides that, with some exceptions, a custodian shall deny inspection of public records containing "information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness." Records relating to a donation made to another person or entity constitute "information about the finances of a person." It provides information about an individual's financial activities, assets, and in some cases, liabilities.

Circuit Court for Baltimore City
Case Nos. 24-C-23-004122, 24-C-23-004416

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

Nos. 340, 371
September Term, 2024

_____

IN THE MATTER OF THE PETITION OF
MAYOR AND CITY COUNCIL OF
BALTIMORE CITY

_____

Graeff,
Albright,
Woodward, Patrick L.
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: May 2, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal involves requests for information pursuant to the Maryland Public Information Act ("MPIA"), Title 4 of the General Provisions Article of the Maryland Code. Appellants, the Baltimore Brew and the Baltimore Sun, requested that appellee, the Baltimore City Board of Ethics (the "Ethics Board"), an agency of the Mayor and City Council of Baltimore, provide a list of persons who made a donation to a fundraising website for City Council President Nicholas Mosby and his then-wife, former State's Attorney Marilyn Mosby.[1] The Ethics Board produced a copy of the donation record, but it redacted the names and addresses of individual donors on the ground that the MPIA required that it deny requests for a person's financial information.

Appellants sought review by the Maryland Public Information Act Compliance Board (the "Compliance Board"), which determined that the redacted information must be disclosed.[2] Appellee then sought judicial review in the Circuit Court for Baltimore City, which reversed the decision of the Compliance Board and upheld the decision of the Ethics Board to deny access to the requested information.

---

[1] The Baltimore City Board of Ethics is an independent body that oversees Baltimore's Public Ethics Law, which applies to all Baltimore City officials and employees. Balt. City Bd. of Ethics, *Ethics Board*, https://ethics.baltimorecity.gov, available at https://perma.cc/FF7K-4RCV (last visited Apr. 4, 2025).

[2] The Compliance Board reviews and resolves complaints related to disputes that arise under the MPIA. Md. Off. of the Att'y Gen., *State Public Information Act Compliance Board*, https://www.marylandattorneygeneral.gov/Pages/OpenGov/piacb.aspx, available at https://perma.cc/6DX5-MYP (last visited Apr. 9, 2025).

On appeal, appellants present the following question for this Court's review:

Did the Compliance Board correctly rule that the exemption for "financial information" in § 4-336 of the Public Information Act was not applicable and that the Ethics Board violated the Act in failing to provide Appellants with an unredacted donor list?

For the reasons set forth below, we shall affirm the judgments of the circuit court, reversing the Compliance Board.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### The Ethics Complaints and Investigation

In August 2021, the Ethics Board received complaints against Baltimore City Council President Nicholas Mosby, alleging violations of the Baltimore City Ethics Law[3] relating to a fundraising campaign to pay for his and his then-wife's private legal expenses.[4] The investigation of these complaints will be discussed briefly to give context to the MPIA requests here.

On May 12, 2022, after a hearing, the Ethics Board issued a 17-page written decision finding that Mr. Mosby had violated the Ethics Law by soliciting and accepting monies from donors and failing to disclose interests in business entities on his annual financial disclosure

---

[3] The Ethics Board referred to Balt. City, Md., Code art. 8 (2005), as the Baltimore City Ethics Law ("Ethics Law"), and we shall do the same.

[4] Appellee advised that "[Marilyn] Mosby was not a subject of the City's investigation, as State's Attorneys are State officials, not City officials, and therefore subject to a different set of ethics laws enforced by a different non-City government agency."

2

statement. The Board found that, in May 2021, the Mosby 2021 Trust (the "Mosby Trust") was established as a special purpose trust to benefit Mr. Mosby and/or Ms. Mosby. In July 2021, the Mosby Trust's attorney filed a form with the Internal Revenue Service declaring that the Mosby Trust was to be treated as a tax-exempt political organization under section 527 of the Internal Revenue Code.[5]

The Ethics Board found that a trust representative subsequently established online fundraising pages on the website "Donorbox," which included "The Mosby Trust" and "Mosby's Defense 2021." The representative then established a website entitled "Mosby 2021 Legal Defense Fund" and "The Mosby 2021 Defense Fund," which advised that the Mosbys were the subjects of a federal criminal tax investigation and requested donations "to pay for the accumulating legal debt incurred for both [Mr. Mosby's and Ms. Mosby's] defense." The website included links to Mr. Mosby's and Ms. Mosby's respective campaign websites.

As part of its investigation, the Ethics Board issued subpoenas to Donorbox's payment processor for the Mosby Trust account and obtained a list of "transactions." The list included each donor's name, address, and email address, the donation amount, the

_____

[5] A tax-exempt "political organization" is defined as, among other things, a "committee . . . organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for an exempt function." 26 U.S.C. § 527(e)(1). An "exempt function" means "the function of influencing or attempting to influence the selection, nomination, election, or appointment of any individual" to certain offices, and includes "the making of expenditures relating to [those offices] which, if incurred by the individual, would be allowable as a deduction under section 162(a)." § 527(e)(2).

donation date and time, and the payment method. From the list, the Ethics Board determined that the account had received 135 individual donations, ranging from $3 to $5,000, resulting in a total of $14,352.55 in donations.

As indicated, the Ethics Board ultimately found that Mr. Mosby had solicited and accepted monetary donations in violation of §§ 6-26 and 6-27 of the Ethics Law, which prohibit a public servant from soliciting or accepting a gift from a controlled donor.[6] The Ethics Board also found that Mr. Mosby failed to disclose his interest in the Mosby Trust in his annual financial disclosure statement, in violation of § 7-22 of the Ethics Law. The Ethics Board included in the administrative record of its decision a spreadsheet of donations, with the names, email addresses, and most of the address information redacted for each donor. The Ethics Board did not redact the date and time of each donation, the amount of the donation or the payment method.

The circuit court subsequently affirmed the Ethics Board's decision that Mr. Mosby violated the Ethics Law by soliciting or facilitating the solicitation of a gift from a controlled donor and by failing to report a business entity in which he had an interest on his annual financial disclosure statement. It reversed the Board's decision that Mr. Mosby had directly or indirectly accepted a gift from a controlled donor.

---

[6] A controlled donor is defined as including a person that does business with the public servant's agency, engages in an activity regulated by the agency, or has a financial interest that might be substantially affected by the performance or nonperformance of the public servant's official duties. Balt. City, Md., Code art. 8, § 6-26(a) (2008); Board Regulation R 06.26.1(2).

## The MPIA Requests

On March 22 and March 24, 2023, appellants separately filed requests to the Ethics Board under the MPIA to obtain a copy of the list of donors to the Mosby Trust. The Ethics Board produced a record listing the dates and amounts of donations, but it redacted the names of the donors, stating that it was required to protect information about an individual's financial activity under Md. Code Ann., General Provisions ("GP") § 4-336 (Repl. Vol. 2019). Both requestors invoked mediation with the Maryland Office of the Public Access Ombudsman, but it was unsuccessful.

On June 20 and July 6, 2023, appellants filed separate complaints with the Compliance Board. They argued that donations to the Mosby Trust were not protected from disclosure under GP § 4-336 because the names of donors did not constitute financial information of an individual, and even if they did, contributions to a legal defense fund do not reveal personal financial information. The Baltimore Sun further asserted that the exemption for financial information applied "unless otherwise provided by law," and federal law required disclosure of campaign contributions that were more than $200.

On July 20, 2023, appellee responded to the complaints, setting forth two arguments. First, it asserted that GP § 4-336, which mandated the denial of access to "information about the finances of an individual," applies to the names and addresses of the donors. Appellee argued that disclosing this information would inherently reveal financial details about the donors. Citing to *Immanuel v. Comptroller of Maryland*, 449 Md. 76, 95 (2016), appellee asserted that the MPIA was not intended to invade individuals'

5

privacy simply because the State possesses certain information. It argued that its redactions were proper pursuant to § 4-336.

Second, appellee disputed the assertion that it must disclose the names and addresses of donors contributing more than $200 annually because federal law requires public reporting of such information. It argued that the MPIA does not obligate custodians to release protected information simply because another law mandates disclosure by a different entity. Rather, it asserted that, unless the other law specifically compelled the custodian in question to disclose the records, that law has no bearing on the MPIA's application.

On September 6, 2023, the Compliance Board issued a written decision. It stated in its decision relating to the complaint filed by the Baltimore Sun that the Ethics Board violated the MPIA by redacting the list of donors to the Mosby Trust.[7] The Compliance Board found that the exemption in § 4-336 for financial information did not apply to the names and addresses of donors to the Mosby Trust. It explained:

> Although donations to a § 527 political organization might broadly qualify as "financial activity," we do not think that these donations are what the Legislature intended to protect when it enacted § 4-336. To start, we note that not all monetary donations are necessarily protected by § 4-336. As the complainant points out, Maryland's Election Law Article requires that certain campaign- related donations be reported. For example, "participating organizations," which are defined to include § 527 organizations that make "political disbursements," must file certain registrations or reports after the political organization makes disbursements over certain threshold amounts— i.e., more than $6,000, $10,000 or more, and $50,000 or more. Md. Code Ann., Elec. Law § 13-309.2. Regulations adopted by the State Board of Elections ("SBE") require participating organizations to disclose

---

[7] The Compliance Board noted that it issued separate decisions for each of the two complaints filed, but the substance of each decision was substantially the same.

donor information in those reports. *See* COMAR 33.13.17.03B. The information parallels what is required by federal law, although it appears that there is no minimum threshold amount of donation that triggers disclosure. *Id.* The SBE makes those reports publicly available. *See* Maryland Campaign Reporting Information System, https://campaignfinance.maryland.ov/Public/ViewFiledReports (in "Committee Details" field, select "Participating Organization Committee" from the drop-down menu under "Committee Type," and then click on "Search"). Though it is not for us to determine the extent to which the Mosby Trust may be subject to (or may have violated) State election laws, we find these provisions relevant to whether donations to a § 527 political organization fall within the scope of § 4-336.

As described above, the Mosby Trust is a § 527 political organization with federal donor disclosure obligations, *see* 26 U.S.C.A. § 527(j), whose stated purpose is "the prevention of any attempt to influence the selection, nomination, election or appointment of" specific elected officials (i.e., the Mosbys), *see* Form 8871 *supra*, note 7. Put simply, donations to that organization do not "seem to fall in the same category as information about 'assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness'" that § 4-336 safeguards. *Kirwan* [*v. Diamondback*, 352 Md. 74, 85 (1998)]. The donations lack the same private financial character that information about "assets, income, liabilities, net worth, [and] bank balances" all share. And, while donations to a § 527 political organization might not represent the donors' "financial transactions with the State itself," or clearly show how "the government spends its money," . . . in our view, those are not exclusive of the ways in which person's financial activity may be so closely related to government and the public sphere as to render that information disclosable under the [M]PIA. Campaign finance activity, for example, is not ordinarily protected financial information. We think that donations like these—donations that are made to support elected officials in their political capacities—are much more akin to that sort of financial activity, which is commonly accepted as disclosable.

The Compliance Board determined that disclosing the donors' identities served the purpose of the MPIA to provide the public with "information *concerning the operation of their government.*" (quoting *Immanuel*, 449 Md. at 88). It stated that the identities were relevant to the compliance efforts of the Ethics Board and to an "understanding who might be seeking to curry favor with powerful elected officials." The Compliance Board found

that disclosure of the donors' names would not reveal private activity because "the act of donating to a § 527 political organization does not constitute 'private activity.'"

The Compliance Board continued:

> In reaching our conclusion, we are mindful of § 4-103(b), which provides that "unless an *unwarranted* invasion of the privacy of a person in interest would result, this title shall be construed in favor of allowing inspection of public record, with the least cost and least delay" to the requester. (Emphasis added). While 4-336 may have been "intended to address the reasonable expectation of privacy that a person in interest has" in certain financial activities, *Immanuel*, 449 Md. at 82, we view the information at issue here differently than we might view, e.g., donations to charities or even donations that support certain public institutions, like the public school a child attends. To the extent that revealing the names and addresses of people who donate to § 527 political organizations in support of political candidates or elected officials causes any invasion of personal privacy, on balance it does not seem like an unwarranted one given the public's interest in election integrity and detecting political corruption. *Cf. John Doe No. 1 v. Reed*, 561 U.S. 186, 199, 202 (2010) (concluding that "public disclosure of referendum petitions in general"—including the names and addresses of those who signed them— "is substantially related to the important interest of preserving the integrity of the electoral process," and thus "disclosure under [Washington State's Public Records Act] would not violate the First Amendment").

(Alteration in original).

The Compliance Board stated that, in light of its conclusion "that § 4-336 does not apply to the names and addresses of donors to the Mosby Trust," it would "not address the parties' additional arguments." Nevertheless, it stated that it did not agree with appellee's argument that § 4-328, which provides that denial of a record was required "[u]nless otherwise provided by law," was applicable only when the "other law" requires the specific custodian to disclose requested information. It stated that this interpretation of § 4-328 was "at odds with the [M]PIA's general presumption in favor of disclosure." The Compliance Board ordered the Ethics Board to produce the list of donors without redactions.

8

## III.

## The Circuit Court Proceedings

Appellee filed a petition for judicial review in both cases. On March 15, 2024, after a hearing, the circuit court issued a Joint Memorandum Opinion and a separate Order in each matter, reversing the decisions of the Compliance Board. The court stated that GP § 4-336 set forth a mandatory exemption for disclosure of financial information, and the General Assembly included "multiple overlapping illustrative terms – 'assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness,'" which indicated an intent that the category "information about the finances of an individual" be construed broadly. The court concluded that "information identifying specific contributions made by private individuals to a private trust through a private web site is information concerning the contributors' 'financial . . . activities,'" and therefore, it constitutes "information about the finances of an individual," which "the City Board of Ethics was required to withhold from public disclosure." (Alteration in original). The court acknowledged that single donations, some in small amounts, "show little about any person's overall financial position," but it concluded that the information was covered by § 4-336.

The court rejected the Compliance Board's conclusion that the General Assembly meant to exclude from § 4-336 private financial transactions with some political nexus. It noted that the legislature knew how to carve out exclusions, pointing to the statutory language stating that the salary of a public employee, which constitutes financial information, was not exempt from disclosure under § 4-336. It also noted that the

9

Compliance Board did not identify anything in the text or legislative history of the MPIA that would support a "silent exclusion from § 4-336 of any financial transactions that implicate political officials in some way." It rejected the Compliance Board's conclusion that, because some political contributions must be disclosed under federal and state campaign finance regulations, "*all* contributions with some nexus to political activity are removed as a matter of law from the § 4-336 exemption."[8] The court concluded that the City Ethics Board properly denied public access to the names and addresses of the donors because it "would have disclosed exempt individual financial information."

This appeal followed.

### DISCUSSION

Appellants contend that the "Compliance Board correctly determined that the Ethics Board violated the [M]PIA by redacting the names and addresses from the donor list." They assert that the "names and addresses of the donors is not 'information about the finances' of the donors under the plain language of § 4-336." Appellants argue that "[t]he donor list reflects, at most, a single payment made on a single occasion," which "reveals nothing about the 'finances' of the donor or what her assets, income, liabilities, net worth, bank balances, or creditworthiness might be." They assert that "[a] single payment also does not constitute a 'financial history or activities,' which denotes a [series] of

---

[8] The court also noted that the Compliance Board did not rely on the provision of § 4-328 regarding "other law." Because appellants are not relying on GP § 4-328 on appeal, we will not include the court's discussion on that issue here.

10

transactions over time from which one might glean some qualitative information about the payer's assets, income, liabilities, net worth, bank balances, or creditworthiness."

Appellee contends that the "clear and unambiguous language of GP § 4-336 applies to records of donations to a legal defense fund, even when the fund benefits a politician," and the Compliance Board's decision to the contrary was erroneous. It asserts that § 4-336 "lays down a blanket prohibition against disclosing information about an individual's financial activities, without any restrictions on the prohibition as to the type of financial activities involved." Appellee argues that "[Appellants'] insistence that a donation is not financial activity is patently absurd," asserting that "[a] record of a donation shows that a person had a certain amount of money (an asset) and that they transferred that money to another person or entity," which is "plainly information about these individuals' financial activity."

## I.

### Standard of Review

In reviewing the propriety of an agency decision, we look through the decision of the circuit court to evaluate the agency's decision. *Cosgrove v. Comptroller of Md.*, 263 Md. App. 147, 158 (2024). In conducting our review, we consider the agency's findings of fact and conclusions of law under the following standard of review:

> An agency's factual findings and inferences drawn therefrom are reviewed under the substantial evidence standard. [*Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 359 (2022)]. Under the substantial evidence standard, "the court defers to the facts found and inferences drawn by the agency when the record supports those findings and inferences." *In re Featherfall Restoration LLC*, 261 Md. App. 105, 128, 311 A.3d 437 (2024), *cert. granted*, No. 67, Sept. Term, 2024, 2024 WL 3330317 (Md.

11

June 17, 2024) (quoting *Md. Dep't of the Env*[*'t*] *v. Cnty. Comm'rs of Carroll* [*Cnty.*], 465 Md. 169, 201, 214 A.3d 61 (2019)). "The reviewing court considers whether a reasoning mind reasonably could have reached the factual conclusion reached by the agency." *Id.* (internal citations omitted).

An agency's decision is also reviewed for errors of law. *FC-GEN Operations Invs.*, 482 Md. at 360, 287 A.3d 271. Unlike an agency's findings of fact, its conclusions of law are reviewed de novo for correctness. *Id.*

\* \* \*

When we review a legal challenge to an agency's interpretation of a statute it administers, we must determine how much weight to give the agency's interpretation. *Md. Dep't of the Env*[*'t*] *v. Assateague Coastal Tr*[.], 484 Md. 399, 451, 299 A.3d 619 (2023). The Court applies a "sliding-scale approach," in which the weight given to the agency's interpretation depends on a number of factors. *Id.*; *In re Md. Off. of People's Couns.*, 486 Md. 408, 441, 310 A.3d 1083 (2024). "We give more weight when the interpretation resulted from a process of reasoned elaboration by the agency, when the agency has applied that interpretation consistently over time, or when the interpretation is the product of contested adversarial proceedings or formal rule making." *Assateague Coastal Tr[.]*, 484 Md. at 451-52, 299 A.3d 619 (quoting *FC-GEN Operations Invs.*, 482 Md. at 363, 287 A.3d 271).

*Id.* at 158-59.

Here, there is no factual dispute. Rather, the issue here, the interpretation of GP § 4-336, is an issue of law.

## II.

### MPIA Generally

Before addressing the specific arguments of the parties, we discuss generally the MPIA. The MPIA "gives the public the right to broad disclosure of government or public documents with exemptions for specific kinds of information." *Immanuel*, 449 Md. at 81. GP § 4-103 sets forth the general right to information, as follows:

12

(a) *In general.* — All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees.

(b) *General construction.* — To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this title shall be construed in favor of allowing inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection.[9]

The purpose of the MPIA is to ensure that "citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *Kirwan*, 352 Md. at 81 (quoting *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 73 (1998)). The MPIA is "a powerful tool for understanding the activities and actions of the State government." *Immanuel*, 449 Md. at 95. "We construe the MPIA liberally to effectuate the Act's broad remedial purpose." *Id.* at 81.

The broad access to public records, however, is not without limits. There is a balance between disclosure and "maintaining privacy of individualized information." *Id.* at 91. Although the MPIA allows "Marylanders to learn about what their government is doing," it is not "a means of invading the privacy of individuals merely because the State has collected information about those people or their property." *Id.* at 95. Thus, the MPIA provides for certain mandatory exemptions from disclosure, which "require the agency to withhold the protected records." *Amster v. Baker*, 453 Md. 68, 76 (2017).

---

[9] A public record is defined, in part, as a document that "is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business." Md. Code Ann., General Provisions ("GP") § 4-101(k)(1)(i) (2024 Supp.). There is no dispute in this case that the records requested constitute a public record.

13

The MPIA provides that, as a general matter:

[A] custodian shall deny inspection of a public record or any part of a public record if:

>     (1)    by law, the public record is privileged or confidential; or
>     (2)    the inspection would be contrary to:
>       (i) a State statute;
>       (ii) a federal statute or a regulation that is issued under the statute and has the force of law;
>       (iii) the rules adopted by the Supreme Court of Maryland; or
>       (iv) an order of a court of record.

GP § 4-301(a).

GP § 4-328 addresses mandatory statutory exemptions from disclosure. It provides:

"Unless otherwise provided by law, a custodian shall deny inspection of a part of a public record, as provided in this part." GP § 4-328. One category of documents encompassed by § 4-328, the one relevant here, is financial information. Section 4-336, a mandatory exemption for disclosure of financial information, provides as follows:

(a) *Scope of section*. — This section does not apply to the salary of a public employee.

(b) *In general*. — Subject to subsection (c) of this section, a custodian shall deny inspection of the part of a public record that contains information about the finances of an individual, including assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness.

(c) *Required inspection for person in interest*. — A custodian shall allow inspection by the person in interest.

### III.

### Financial Information

14

As indicated, the issue here is whether the names and addresses of the donors to the Mosby Trust constitute "information about the finances of an individual," which, unless covered by an exception, the custodian shall not disclose.  In considering this issue, we apply settled canons of statutory construction, as follows:

> "The goal of statutory construction is to discern and carry out the intent of the Legislature." *Blue v. Prince George's County*, 434 Md. 681, 689, 76 A.3d 1129 (2013).  Our search for legislative intent begins with the text of the provision we are interpreting, viewed not in isolation but "within the context of the statutory scheme to which it belongs." *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169, 258 A.3d 296 (2021).  Our review of the text is wholistic, seeking to give effect to all of what the General Assembly included and not to add anything that the General Assembly omitted.  In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it; we avoid "forced or subtle interpretations"; and we avoid constructions that would negate portions of the language or render them meaningless.  *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377, 250 A.3d 197 (2021); *see also Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18 (2010); *Koste v. Town of Oxford*, 431 Md. 14, 25-26, 63 A.3d 582 (2013).  When statutory terms are undefined, we often look to dictionary definitions as a starting point, to identify the "ordinary and popular meaning" of the terms, . . . *FC-GEN Operations Invs. LLC*, 482 Md. [at] 390, . . . before broadening our analysis to consider the other language of the provisions in which the terms appear and the statutory scheme as a whole, including any legislative purpose that is discernible from the statutory text.  *Lockshin*, 412 Md. at 275-76, 987 A.2d 18.  Presuming the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law," we also "seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Wheeling*, 473 Md. at 377, 250 A.3d 197 (quoting *Lockshin*, 412 Md. at 275-76, 987 A.2d 18).

> After exhausting the tools available for our textual analysis, viewed in context of the statutory scheme and in light of apparent legislative purpose, we determine whether the statute is ambiguous.  Ambiguity can arise in two different ways:  "Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme." *Bennett v. Harford County*, 485 Md. 461, 485-86, 301 A.3d 117 (2023) (quoting *FC-GEN Operations*, 482 Md. at 380, 287 A.3d 271).  If neither applies, "our inquiry generally ceases at

15

that point and we apply the statute as written." *Williams v. Morgan State Univ.*, 484 Md. 534, 546, 300 A.3d 54 (2023) (quoting *Thornton Mellon, LLC v. Adrianne Dennis Exempt Tr.*, 478 Md. 280, 313-14, 274 A.3d 380 (2022)). If, however, the statute is ambiguous, we seek to "resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Bennett*, 485 Md. at 486, 301 A.3d 117 (quoting *FC-GEN Operations*, 482 Md. at 380, 287 A.3d 271). Such sources include "the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it." *Boffen v. State*, 372 Md. 724, 737, 816 A.2d 88 (2003) (quoting *Goldberg v. Miller*, 371 Md. 591, 602, 810 A.2d 947 (2002)); *see also Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982) ("the history of the passage of the law, the reports of committees and commissions, the introduction of amendments and testimony given before legislative committees" aid in examining legislative intent).

*Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644-46 (2024).

Here, the language of the statute is clear and unambiguous. As the Supreme Court of Maryland has noted, although the term financial information is not expressly defined in the statute, the language of § 4-336(b) "indicates what type of information the Legislature considered to be financial information." *Kirwan*, 352 Md. at 85. In *Kirwan*, the Court concluded that records of parking tickets did not "fall in the same category as information about 'assets, income, liabilities, net worth, bank balances, financial history or activities, or creditworthiness.'" *Id.* In this case, by contrast, we conclude that the names and addresses of donors to a legal defense fund do fall in the same category as the items listed in the statute.

Although our review is of the Compliance Board's opinion, we find persuasive the circuit court's observation that "the use of multiple, overlapping illustrious terms" indicates the legislature's intent that "'information about the finances of an individual' be construed

16

broadly." The circuit court determined that "information identifying specific contributions made by private individuals to a private trust through a private web site is information concerning the contributors' 'financial . . . activities,'" and therefore, it is "'information about the finances of an individual' that the City Board of Ethics was required to withhold from public disclosure." (Alteration in original). We agree with that conclusion.

Appellants contend that the names of the donors did not constitute protected financial information because "the donor list reflects a single payment on a single occasion," and a single payment does not contain information about the finances of the individual donors. We note, however, and appellants conceded at oral argument that, because the names were redacted, we do not know if the donors made a single payment or multiple payments.

In any event, whether there was a single donation of money or multiple donations, disclosing that information provides information about a person's financial activity. It also provides information that a person had an asset prior to the donation, and to the extent the donation was made by credit card, it gives information about a person's liabilities. Information about a donation made to another person or entity clearly constitutes "information about the finances of a person."

That the payment might involve small amounts does not preclude a finding that it provides financial information. In *Immanuel*, 449 Md. at 79, 97-98, the Supreme Court held that minimal "incremental financial information" regarding unclaimed funds held by the Comptroller of Maryland regarding abandoned property accounts was protected from disclosure by GP § 4-336. In that case, the issue was whether the Comptroller was required

to disclose a list of names of individuals with the 5,000 largest accounts of unclaimed property, from the largest value to the smallest. *Id.* at 79. The Court found persuasive a prior opinion by the Maryland Attorney General that concluded that a list showing the type of property people had left unclaimed revealed information about a person's assets and ordinarily would be nondisclosable. *Id.* at 94. It held that "GP § 4-336, *in a vacuum*, would prohibit the Comptroller from disclosing any information about individual accounts that are in his guardianship" because it "is the kind of information that GP § 4-336 protects from inspection—individual information about assets, net worth, bank balances, and financial history." *Id.* at 94-95. Although the Comptroller was required under the Uniform Disposition of Abandoned Property Act, Md. Code Ann., Com. Law ("CL") § 17-311(a)(1), (b)(1) (2013 Repl. Vol.), to notify the public of accounts of abandoned property, including the names of persons with unclaimed property, *id.* at 82-83, the MPIA precluded the Comptroller from giving a value-ordered list because it would disclose financial information not otherwise required to be disclosed. *Id.* at 97.

Similarly, here, as indicated, listing donors to a person or an organization provides financial information about an individual's financial activities, assets, and in some cases, liabilities. Indeed, even the Compliance Board stated that "donations to a § 527 political organization might broadly qualify as 'financial activity.'" It determined, however, that § 4-336 did "not apply to the names and addresses of donors to the Mosby Trust" because campaign finance activity was "not ordinarily protected financial information," but rather, it was financial activity that was "commonly accepted as disclosable." The Compliance Board's statement in this regard followed a discussion of state and federal law requiring

18

disclosure of campaign-related donations. The Compliance Board, however, specifically declined to address whether those "other laws" required disclosure of the information here. Instead, it found that the names and addresses of the donors to the Mosby trust did not fall within the exemption in GP § 4-336 for financial information.

At oral argument, counsel for appellants clarified that they are not arguing on appeal that state and federal law required disclosure of the names and addresses of the donors. Counsel stated that appellants are not arguing that the Ethics Board was required to disclose them pursuant to the provision of GP § 4-328 providing that financial information was not to be disclosed "[u]nless otherwise provided by law." Counsel clarified that appellants are limiting their argument, as the Compliance Board did in their conclusion, to the provision in GP § 4-336. We similarly limit our analysis to disclosure requirements of § 4-336.

Appellants assert that the names and addresses of the donors do not constitute financial information pursuant to § 4-336 because the donors could not have expected the donations to be private. In that regard, they rely on the Compliance Board's statement that campaign finance activity and donations to elected officials in their political capacities are not private and are "commonly accepted as disclosable."

The MPIA, however, does not contain any exception that supports the argument in that regard. The MPIA outlines three specific categories of documents that are not covered by the exemption for financial information: (1) the salary of a public employee, § 4-336(a); (2) inspection by the person in interest, § 4-336(c); and (3) information that must be disclosed because it is otherwise provided by law, § 4-328. Here the information requested does not constitute salary, it was not requested by the person in interest, and as indicated,

19

appellants are not arguing that the information was "otherwise provided by law." GP § 4-336 does not contain any exception to the mandatory requirement that financial information shall not be disclosed based on the person's subjective expectation of privacy in the information.

Appellants next contend that "§ 4-336 entails a balancing of the interest in protecting private information against the interest in disclosing the workings of the government." They assert that this balancing weighs in favor of disclosure here because the donors had no reasonable expectation that their donation would be kept private and the public has an "interest in election integrity and detecting political corruption."

We agree that the MPIA seeks to balance the interests "between government transparency and the protection of private commercial interests." *Abell Found. v. Balt. Dev. Corp.*, 262 Md. App. 657, 700 (2024) (quoting *Amster*, 453 Md. at 71). It struck that balance, however, in favor of a mandatory exemption from disclosure of financial information, with specific exceptions not applicable here.

Although appellants argue that the exemption against disclosure should not apply to donations to political persons, it is not our role to add that exemption to the statute. As this Court recently stated:

> [A] policy argument that a statutory exemption should be circumscribed through the addition of language that the statute itself does not contain is best directed to the legislature, not to a court. "[J]ust as we cannot properly *expand* [GP § 4-335] beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms."

*Id.* at 701 (some alterations in original) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019)).

20

The information requested here, the names and addresses of donors to the Mosby Trust, constituted financial information under GP § 4-336.  The Ethics Board properly redacted that information in responding to appellants' MPIA requests.  The Compliance Board erred in ordering the Ethics Board to produce an unredacted list of donors, and the circuit court properly reversed the decision of the Compliance Board.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**